Frederick W. BURKHARDT, III, Appellant,

v.

HOUSTON ORTHOPEDIC ASSOCIATES and Charles E. Baker, M.D., Appellees.

No. B14–89–00656–CV.

Court of Appeals of Texas, Houston (14th Dist.).

July 12, 1990.

Rehearing Denied Aug. 9, 1990.

Jeffrey D. Roberts, Kevin Dubose, Mark D. Clore, Houston, for appellant.

T. Scott Allen, Jr., Lori M. Gallagher, Houston, for appellees.

Before ROBERTSON, SEARS and DRAUGHN, JJ.

## MAJORITY OPINION

SEARS, Justice.

Frederick Burkhardt, appellant, appeals from the trial court's granting of a judgment notwithstanding the verdict in a medical malpractice suit. In a single point of error, appellant contends the trial court erred in granting judgment n.o.v. because the jury's findings of negligence and proximate cause were supported by legally sufficient evidence. Because we find the evidence was sufficient, we reverse the judgment of the court below and render judgment on the jury verdict.

Appellant was injured in March, 1982, when he kicked a closed door and shattered his tibia. Dr. Baker, a board certified orthopedic surgeon, performed an operation in which an internal fixation device was placed in appellant's leg to hold the fragmented pieces of bone together.

Appellant's treatment seemed to be progressing normally until sometime between March and July, 1982, when Burkhardt began experiencing severe pain in his leg. In July, 1982, appellant was admitted to the hospital and was examined by Dr. Geraldine Miller, an infectious disease specialist. Dr. Miller confirmed that appellant was suffering from osteomyelitis, a bone infection. At that time, Dr. Miller informed Dr. Baker that in her opinion the entire internal fixation device should be removed to properly treat the infection. Dr. Baker declined to follow Dr. Miller's advice.

On July 15, 1982, Dr. Baker re-entered the leg to determine if the fixation device was still functioning properly. Despite the degree of infection, Dr. Baker removed only a single screw that had become loose and he left the fixation device in appellant's leg.

In September, 1982, Dr. Miller again saw appellant and observed the development of a new fistula, indicating the continued presence of infection in Burkhardt's leg. In late September, appellant was once again hospitalized. The day after appellant entered the hospital, Dr. Baker operated on the leg for the third time and removed the internal fixation device. Approximately three weeks later, Dr. Baker attached an external fixation device to appellant's leg and performed a bone graft from one of Burkhardt's hips to the infected bone in his leg. The external fixation device was then removed by Dr. Baker in November, 1982. In December of the same year, Dr. Baker performed a skin graft to close up the infection site on appellant's leg. Appellant was discharged from the hospital on December 30, 1982, with a cast on his leg and with instructions to use an electric bone growth stimulator at home for six months.

Throughout 1983, appellant continued to suffer from osteomyelitis although he did obtain union of his fracture by the middle of that year. In early 1984, Dr. Baker suggested that appellant see another doctor to undergo additional surgery to clear up the osteomyelitis. Rather than consult the physician recommended by Dr. Baker, appellant traveled to Boston and was treated by Dr. Michael Drew, an orthopedist with experience in treating osteomyelitis. Dr. Drew placed appellant on antibiotics for two weeks and then performed a debridement of the infection site. Since he was released from the Boston hospital, appellant has been free of infection.

In May, 1984, appellant filed the instant lawsuit alleging Dr. Baker was negligent in failing to remove the internal fixation device in July, 1982. The jury found Dr. Baker was negligent and that the negligence was the proximate cause of appellant's injuries. The jury awarded appellant $237,500 in damages. Following the jury's verdict, the trial court granted Dr. Baker's and Houston Orthopedic Associates' motion for judgment notwithstanding the verdict and entered a judgment that appellant take nothing. It is from this judgment that appellant now appeals.

■ In his sole point of error, appellant contends the trial court erred in granting a judgment n.o.v. because the jury findings of negligence and proximate cause were supported by legally sufficient evidence. We initially note that in order to affirm the trial court's judgment, we must find that there is no evidence of probative force upon which the jury could have based their findings. *Henderson v. Sims*, 591 S.W.2d 593, 594 (Tex.Civ.App.—Tyler 1979, no writ).

■ At trial, all testifying experts agreed that the established standard of care for treating fractured bones in the presence of infection was to remove any internal fixation device unless the device was providing rigid fixation of the fracture site. Dr. Michael Drew, the physician who treated appellant in Boston, testified by deposition that appellant's internal fixation device was loose in July, 1982. This testimony was based on Dr. Drew's review of Dr. Baker's operative report from the July 15, 1982, surgery. Dr. Drew stated that the presence of one loose screw was also an indication that the entire fixation device was loose. He went on to testify that the detection of three other loose screws in September, 1982, was further evidence that the device was not rigidly in place in July, 1982. Finally, Dr. Drew testified that, based on reasonable medical probability, the internal fixation device placed in appellant's leg was probably loose on July 15, 1982. We find this evidence sufficient to support the jury finding of negligence.

Although several of the expert witnesses testified at trial that the presence of the internal fixation device hindered the treatment of appellant's osteomyelitis, the testimony of Dr. Geraldine Miller was especially revealing. Dr. Miller, an infectious disease specialist, testified that the chances of an early cure of the infection is greater when the foreign material (internal fixation device) is removed. Further, she testified that the continuation of the infection increased the risk of damage to the bone and skin around the infection site. In her opinion, the infection must be treated first and she told Dr. Baker on several occasions that the fixation device should be removed immediately. In addition to Dr. Miller's testimony, Dr. Drew testified as follows:

Q: In your opinion, Dr. Drew, if Mr. Burkhardt had had the plate removed on July 15, 1982 and then was managed in accordance with the accepted practice of board certified orthopedic surgeons, would in all reasonable probability the osteomyelitis have been cured at that time rather than in a subsequent period of time when you treated Mr. Burkhardt?

A: There is a probability that the infection could very well have been controlled if the plate had been removed, yes.

We find this testimony legally sufficient to support the jury's finding that appellees' negligence was the proximate cause of appellant's injuries.

Appellees contend that because this evidence fails to rise above the level of mere possibility or conjecture, appellant failed to meet his burden to show proximate cause within a reasonable medical probability. *See Duff v. Yelin*, 751 S.W.2d 175, 176 (Tex.1988). We do not agree. We find that the jury was entitled to believe the testimony of the experts and to believe that the failure to remove the fixation device caused appellant to suffer unnecessary and prolonged pain and unnecessary operations as well as extending the time for curing the infection. This testimony was clearly responsive to questions related to reasonable medical probability. The fact that appellant may have still suffered a prolonged period before cure if the fixation device had

been removed is pure speculation without factual foundation. Therefore, we sustain appellant's point of error.

By way of cross points of error, appellees argue that if this court finds reversible error in the trial court's judgment, we should reverse and remand the cause for a new trial because the jury's answers on the negligence and proximate cause issues were not supported by factually sufficient evidence and because the answers were against the great weight and preponderance of the evidence. Again, we disagree. As outlined above, appellant met his burden in providing evidence to establish both negligence and proximate cause. We overrule appellees' cross points of error.

We reverse the judgment entered by the court below, and render judgment on the jury verdict.

ROBERTSON, Justice, dissenting.

Because I believe appellant failed to meet his burden of establishing that appellees' negligence was the proximate cause of his injury, I respectfully dissent.

The supreme court has held that although it is not necessary to use the magic words of "reasonable medical probability" to establish proximate cause in a medical malpractice case, "a jury issue should not be submitted when it is based merely upon speculation and conjecture." *Duff v. Yelin,* 751 S.W.2d 175, 176 (Tex.1988). I believe the evidence in the instant case concerning proximate cause fails to rise above speculation and conjecture.

Both appellant and appellees agree that the issue of proximate cause centers on one passage of the testimony from Dr. Drew. That testimony reads as follows:

Q: In your opinion, Dr. Drew, if Mr. Burkhardt had had the plate removed on July 15, 1982 and then was managed in accordance with the accepted practice of board certified orthopedic surgeons, would in all reasonable probability the osteomyelitis have been *cured* at that time rather than in a subsequent period of time when you treated Mr. Burkhardt?

A: There is a probability that the infection could very well have been *controlled* if the plate had been removed, yes.

Q: In your opinion, had Mr. Burkhardt had the treatment, the removal of the internal fixation device in 1982 during the July hospitalization, what effect would that have had on any necessity of being hospitalized in Boston during 1984?

A: It *might* have precluded such hospitalization.

Q: In reasonable probability, in your opinion, wouldn't that have precluded subsequent hospitalization here in Boston? You can answer the question.

A: As I previously stated, I think the removal of the plate at that time *might* have—and there is a *possibility* that it would have—precluded the treatment that was later necessary for Mr. Burkhardt. (emphasis added throughout).

As shown in the testimony above, Dr. Drew never stated he believed appellant's infection could have been *cured* any earlier if the internal fixation device had been removed. He merely said it probably could have been *controlled.* Further, Dr. Drew would go no further than to state there was a *possibility* that removal of the device would have precluded subsequent hospitalization and treatment for the infection. Based on this testimony, I do not believe appellant's evidence concerning proximate cause ever rose above mere speculation and conjecture. The judgment notwithstanding the verdict entered by the trial court should be affirmed.

I respectfully dissent.